IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER BILARDELLO | Criminal Action No.<br><br>1:22-CR-028-TWT-JKL |

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by Ryan K. Buchanan, United States Attorney, and Annalise K. Peters, Assistant United States Attorney for the Northern District of Georgia, respectfully submits this memorandum in preparation for the sentencing of Defendant Peter Bilardello. For the reasons described below, the United States respectfully requests that Defendant be sentenced to 70 months' imprisonment.

**I.  Background**

Defendant Peter Bilardello, a 17-year, active Deputy Sheriff with the Cobb County Sheriff's Office, uploaded and distributed child pornography on MeWe, a social media platform. In August 2021, when Cobb County Police executed a search warrant on Defendant's MeWe account ("fun4her"), they learned that on multiple dates in 2019 and 2020, Defendant had distributed child pornography to other MeWe users. After learning that the social media account belonged to Defendant, Cobb County Police promptly executed a search warrant at Defendant's house and seized his cell phone and other devices. (PSR ¶¶ 9, 17). On Defendant's phone, investigators found 126 images and 182 videos of child pornography, including numerous videos of babies and toddlers being vaginally

1

and anally penetrated by adults. (PSR ¶ 18). Defendant's phone showed that he had also anonymously chatted with numerous people online about engaging in sexual acts with children. (*Id.*). When asked what ages he preferred, Defendant said, "The younger the better." (PSR ¶ 19).

On January 25, 2022, a federal grand jury returned an indictment against Defendant charging him with one count of distribution of child pornography and one count of possession of child pornography. (Doc. 1). On August 29, 2022, Defendant entered a negotiated guilty plea to distribution of child pornography. (Doc. 29-1). Sentencing is set for November 30, 2022. Without objection from either party, the U.S. Probation Office correctly calculated Defendant's Guideline range as 151-188 months of imprisonment. (PSR at 16).

## II. The Court Should Sentence Defendant to 70 Months of Imprisonment.

Although the Guidelines are advisory, "the district court still must [first] calculate the advisory . . . range correctly." *United States v. Angulo*, 638 F. App'x 856, 860 (11th Cir. 2016) (citing *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008)); *see generally Gall v. United States*, 552 U.S. 38, 49 (2007). After properly calculating a defendant's advisory Guidelines range, the court must consider the § 3553(a) factors,[1] and impose "a sentence sufficient but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from

---

[1] The familiar § 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for deterrence; (5) the need to protect the public; and (6) the need to avoid unwanted sentencing disparities.

2

future criminal conduct. 18 U.S.C. § 3553(a)(2)(A)-(D). The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). The Eleventh Circuit, however, does "not require a district court to state on the record that it has explicitly considered each of the § 3553(a) factors." *United States v. McKleroy*, 783 F. App'x 878, 879 (11th Cir. 2019) (citing *United States v. Dorman*, 488 F.3d 936, 938 (11th Cir. 2007)). It is sufficient that a district court acknowledge having considered the defendant's arguments and the § 3553(a) factors. *See, e.g., id.* In other words, the district court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

In a broad range of cases, and consistent with Department of Justice policy, the United States typically recommends a sentence within the properly calculated Guidelines range because such a sentence "reflect[s] an appropriate balance of the factors set forth in § 3553" and "further[s] the goal of uniform treatment of similarly situated defendants." Justice Manual § 9-27.730; *see also id.* ("In the typical case, this balance will continue to be reflected by the applicable guidelines range, and prosecutors generally should advocate for a sentence within that range."). Nonetheless, federal prosecutors may—with supervisory approval—recommend "based on an individualized assessment of the facts and circumstances of the case…that a sentence above or below the guideline range better serves the public interest and the purposes of sentencing." *Id.* This is such a case. As detailed below, the United States respectfully submits that a below-Guidelines sentence of 70 months' imprisonment reflects a proper balancing of the § 3553(a) factors.

3

### a. Nature and Seriousness of the Offense and Need to Avoid Unwarranted Sentencing Disparities

The harm caused by Defendant's conduct cannot be overstated. The Eleventh Circuit has repeatedly addressed the seriousness of this offense, noting that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). In *Pugh*, the court of appeals noted that using children in pornographic material harms the "psychological, emotional, and mental health of the child." 515 F.3d at 1196. Moreover, the collecting and sharing of child pornography expands the harm done to the child: "Our concern is not confined to the immediate abuse of the children depicted in these images, but is also to enlargement of the market and the universe of this deviant conduct that, in turn, results in more exploitation and abuse of children." *United States v. Williams*, 444 F.3d 1286, 1290 (11th Cir. 2006).

Here, Defendant actively participated in multiple online groups of like-minded pedophiles, where he posted and exchanged child sexual abuse material and engaged in explicit chats about having sex with children. By participating in these groups, which are devoted to sharing and normalizing the sexual exploitation of children, Defendant helped prop up, promote, and expand the black market for child pornography.

The seriousness of Defendant's offenses necessitates a substantial custodial sentence. However, the United States submits that the Guidelines may overstate his culpability. A 2021 study by the United States Sentencing Commission noted that for non-production child pornography offenses, the majority (59%) of defendants received a below-Guideline sentence. CHARLES R. BREYER, ET AL., FEDERAL SENTENCING OF CHILD PORNOGRAPHY: NON-PRODUCTION OFFENSES

4

(United States Sentencing Commission) (2021), at 11. The study also found that for distribution offenses, the median number of images involved was 6,300, "with some offenders possessing and distributing millions of images and videos." *Id* at 4, 30. Here, Defendant possessed a total of 308 images and videos, which is significantly less than the median number of images possessed by similar offenders. (PSR ¶ 21). Nevertheless, Defendant received the Guidelines' maximum five-level enhancement for the size of the collection. (*Id.* ¶ 31).

Taken together, the facts and statistics reflect that the egregiousness of Defendant's conduct, while despicable, is likely overstated by the applicable Guidelines range. But context matters, and placing Defendant's conduct in the proper context does not minimize either the conduct itself or the harm it has had—and will continue to have—on the victims. Defendant deserves a lengthy term of imprisonment, and the United States' requested sentence reflects as much. However, a sentence below 70 months of imprisonment would result in an unwarranted sentencing disparity compared to similar cases nationwide. The Sentencing Commission reported that for recent child pornography distribution offenses, defendants received an average sentence of 135 months' imprisonment. BREYER, at 20-21. The United States' recommended sentence is approximately half of the average sentence imposed for the same offense. That is a substantial benefit to Defendant. Any sentence below the recommended 70 months would be inappropriate in this case.

### b. Defendant's History and Characteristics

Defendant's sentencing memorandum thoroughly explores his reported difficult childhood and sexual abuse he endured. (Doc. 30). Notably missing from

5

that discussion is the most aggravating factor in this case: that Defendant was a 17-year, veteran Deputy Sheriff in the Cobb County Sheriff's Office, where he worked in the sex offender unit at the time of the offense. (PSR ¶ 63). Defendant was assigned to the sex offender unit from February 2017 until he resigned in 2021, days after Cobb County Police executed the search warrant at his house and seized his cell phone. (*See id.*; Gvt. Ex. A, at 1, attached hereto). It bears repeating: <u>Defendant was actively working in the sex offender when he committed the instant offense</u>. During that time, part of his job duties included maintaining, verifying, and updating the list of registered sex offenders residing in Cobb County. (Gvt. Ex. A, at 2-18). Defendant spent his days photographing, fingerprinting, and interacting with convicted sex offenders, conducting home and work visits for registered sex offenders, and reporting violations of sex offender registration requirements—all while he was sharing and consuming child pornography and chatting online about his sexual desire for young children. (*Id.*).

As a sworn law enforcement officer, Defendant <u>knew and understood the harm</u> that his conduct would cause the children depicted in the sexual abuse material he consumed and distributed. During his many years of POST certification, Defendant completed more than 40 hours of training on sexual exploitation crimes and investigations. (Gvt. Ex. A, at 19-27). In March 2021, just a few months before Cobb County Police searched his house and seized his phone, Defendant took a POST training class about understanding trauma and the impact on victims in sexual exploitation cases. (*Id.* at 20). While some child pornography consumers and distributers may not consider the ongoing psychological harm suffered by the children depicted until they are caught, there can be no question

that Defendant, who worked daily in the sex offender unit and completed multiple trainings on sexual exploitation crimes, knew exactly what he was doing.

Defendant's crimes were a terrible breach of trust. "[P]olice officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing." *United States v. Foreman*, 926 F.2d 792, 796 (9th Cir. 1990). As a Deputy Sheriff and sworn law enforcement officer, Defendant's crimes

> has caused and will continue to result in irreparable harm to law enforcement not only in [Cobb County], but everywhere. There is a special obligation to do what is right for those employed in law enforcement, and it is an especially sad day when those charged with enforcement of laws are breaking the laws they are sworn to enforce. Law-breaking by a high-ranking police officer promotes disrespect for the law that must be addressed at sentencing.

*United States v. Molnar*, No. 2:08-CR-20039, 2009 WL 212167, at *1 (W.D. Ark. Jan. 29, 2009), *rev'd and remanded on other grounds*, 590 F.3d 912 (8th Cir. 2010). The nature of Defendant's crimes, coupled with his career in law enforcement and specific work with registered sex offenders, underscores the reprehensibility of his conduct.

### c. Need to Protect Public and Deter Criminal Conduct

Congress, the Supreme Court, and the Sentencing Commission agree that general deterrence is a crucial factor when fashioning an appropriate sentence in child sexual exploitation cases. *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing *United States v. Ferber*, 458 U.S. 747, 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling,

advertising, or otherwise promoting the product")); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

In noting the importance of deterrence, one court of appeals opined that:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). This case—where a sworn law enforcement officer committed a child pornography crime—presents an important opportunity to send a message. The United States submits that a sentence of 70 months' incarceration will provide adequate deterrence—not just to Defendant, but to others who have a similar aberrant interest in the sexual abuse of young children. It also serves the important goal of protecting the public against any future crimes by Defendant. The fact that there is no evidence that Defendant committed hands-on offenses against children does not minimize his conduct or the harm it has had—and will continue to have—on his victims. As the Eleventh Circuit has noted, "The protection of our children against sexual abuse and

predatory pedophiles is of extraordinary importance." *United States v. Williams*, 444 F.3d 1286, 1290.

### III.    Conclusion

For the foregoing reasons, the United States respectfully requests that Defendant be sentenced to a term of imprisonment of 70 months.

Respectfully submitted,

RYAN K. BUCHANAN
   *United States Attorney*

/s/Annalise K. Peters
   *Assistant United States Attorney*
Georgia Bar No. 550845
Annalise.Peters@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Caitlyn Wade

November 29, 2022

/s/ ANNALISE K. PETERS

ANNALISE K. PETERS

*Assistant United States Attorney*